**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ABDEL-BACHIR MOHAMED,           Case No. 1:17-cv-573
    Petitioner,

                                   Dlott, J.
    vs.                                        Bowman, M.J.

U.S. ATTORNEY GENERAL, *et al.*,           **REPORT AND**
    Respondents.                           **RECOMMENDATION**


Petitioner, who is currently detained pursuant to removal orders issued by United States

Immigration and Customs Enforcement (ICE), has filed a pro se petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241. (*See* Doc. 1).  Respondents filed a return of writ, to which

petitioner has responded. (Doc. 8, 11–15).  On February 12, 2018, respondents filed a status

report updating the Court on petitioner's deportation status. (Doc. 17).

For the reasons stated below, the undersigned recommends that the petition be denied

without prejudice.

### I.      BACKGROUND

Petitioner is a native and citizen of Senegal. (Doc. 8-1, Williams Decl. at PageID 29).

On or about December 19, 2013, ICE issued a Notice to Appear, charging petitioner with

removability under section 237(a)(1)(B) of the Immigration and Nationality Act (INA) as a non-

immigrant visitor who remained in the United States for a time longer than permitted. (*Id.*).  On

January 22, 2014, an immigration judge ordered petitioner to be removed from the United States.

(*Id.*).  Petitioner waived appeal of the removal order, rendering petitioner's removal final. (*Id.*).

On February 23, 2017, petitioner was transferred to ICE custody after being indicted in

Hamilton County, Ohio under the alias of Mouhamadou Sall for identity fraud, forgery, and

possessing criminal tools. (*Id.*).  Petitioner has been detained throughout his removal

proceedings.  On June 14, 2017, petitioner was served with a decision to continue detention, pursuant to an initial ninety-day Post Order Custody Review.  (*Id.* at PageID 29).  Petitioner subsequently received two additional decisions to continue detention on September 11, 2017 and December 6, 2017, on the basis that ICE continued to work with the government of Senegal to secure a travel document for petitioner's removal.  (*Id.*).  On or about November 22, 2017, Senegal's Minister of Interior verified that petitioner has an alternate identity of Amadou Thiandella Sall and that this information was forwarded to the Consul General in Washington, DC for the issuance of a travel document.  (*Id.* at PageID 29–30).

ICE subsequently received a travel document issued by the government of Senegal for petitioner's removal under his alternate identity, Amadou Thiandella Sall.  (Doc. 17-1, Williams Decl. at PageID 82).  The document is valid from February 6, 2018 until March 8, 2018.  On February 6, 2018, petitioner was scheduled to be removed from the United States on a commercial flight from New York, New York to Dakar, Senegal.  (*Id.*).  However, the scheduled removal did not take place.  ICE Officer Williams avers that petitioner refused to board the scheduled flight and that ICE will attempt to remove him a second time on another commercial flight with an officer escort.  Williams further avers that "[t]here are currently no impediments to Bachir's removal beyond his own refusal to board his scheduled removal flight" and he believes "that it is significantly likely that Bachir can and will be removed from the United States in the reasonably foreseeable future."  (*Id.*).

## II.     HABEAS PETITION

Petitioner commenced the instant habeas corpus action on August 30, 2017, prior to the discovery of petitioner's alternate identity, issuance of travel documents, and ICE's attempt to remove him to Senegal.  (*See* Doc. 1).  Petitioner contends that he is entitled to relief because he has been detained for more than six months with no significant likelihood of actual removal, in

violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  He also claims that his continued detention

violates his federal due process rights.

Respondent has filed a return of writ, arguing that petitioner has not met his burden to

show that there is no significant likelihood of removal in the reasonably foreseeable future.

(Doc. 8).

### III.    OPINION

Congress has prescribed that once an alien has been ordered to be removed from the

United States, "the Attorney General shall detain the alien" and "remove the alien from the

United States within a period of 90 days."  8 U.S.C. §§ 1231(a)(1)(A) & 1231(a)(2).  Title 8

U.S.C. § 1231(a)(6) further provides in relevant part:

> An alien ordered removed who is inadmissible under section 1182 of this title,
> removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or
> who has been determined by the Attorney General to be a risk to the community
> or unlikely to comply with the order of removal, may be detained beyond the [90-
> day] removal period.

By its terms, § 1231(a)(6) "applies to three categories of aliens:  (1) those ordered removed who

are inadmissible under § 1182, (2) those ordered removed who are removable under §

1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary

[of DHS] determines to be either a risk to the community or a flight risk."  *Clark v Martinez,* 543

U.S. 371, 377 (2005).  In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court interpreted

the provision "to authorize the Attorney General (now the Secretary [of DHS]) to detain aliens in

the second category only as long as 'reasonably necessary' to remove them from the country."

*Clark,* 543 U.S. at 377 (quoting *Zadvydas*, 533 U.S. at 689, 699).  The *Zadvydas* Court held that

reading § 1231(a)(6) to authorize indefinite detention would "raise a serious constitutional

problem" under the Fifth Amendment's Due Process Clause.  *Zadvydas*, 533 U.S. at 690.

3

Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation,

the application of which is subject to federal-court review." *Id.* at 682.

In *Zadvydas*, 533 U.S. at 701, the Supreme Court considered the six-month detention of

an alien who is subject to removal due to criminal convictions to be presumptively reasonable.

The Court then provided the following guidance in addressing detentions that exceed the six-

month presumptively reasonable limit:

> After this 6-month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable future,
> the Government must respond with evidence sufficient to rebut that showing.
> And for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink.  This 6-month presumption, of course, does not
> mean that every alien not removed must be released after six months. To the
> contrary, an alien may be held in confinement until it has been determined that
> there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*  Although *Zadvydas* only addressed the second category of aliens covered by § 1231(a)(6),

the Supreme Court has held that the *Zadvydas* Court's construction of the statutory provision

applies "without differentiation to all three categories of aliens that are its subject," including the

first category of aliens who, like petitioner, were ordered removed as "inadmissible" under 8

U.S.C. § 1182.  *See Clark*, 543 U.S. at 378.  (*See also* Doc. 8 at PageID 25).

In this case, petitioner does not challenge his removal order or dispute that he is subject

to removal under § 1182.  Because petitioner was deemed to be inadmissible under § 1182, he

falls within the first category of aliens eligible for extended detention under § 1231(a)(6).  It is

undisputed that, at this point in time, petitioner has been detained longer than the six-month

presumptively reasonable period under *Zadvydas*.  However, petitioner has not met his initial

burden of proof under *Zadvydas* in the absence of any evidence in the record showing that there

is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

As noted above, it appears that ICE officials have worked with the government to secure a travel document for petitioner's removal, have obtained travel documents that remain valid until March 8, 2018, and have attempted to remove petitioner.[1]  According to ICE Officer Williams, no impediments exist with respect to petitioner's removal beyond petitioner's refusal to board his removal flight and a second attempt to remove petitioner will be made, this time with an officer escort. (*See* Doc. 17-1, Williams Decl. at PageID 82).  Based on this information, the undersigned finds that petitioner is not entitled to habeas relief based on his claim that there is no significant likelihood of removal in the reasonably foreseeable future.

Petitioner is unable to prevail on any argument that his right to due process has been violated to the extent that he has remained in detention during the period following his February 6, 2018 refusal to board a plane to Senegal.  In other analogous cases, courts have uniformly refused to find a constitutional violation and/or have concluded that the removal period is tolled or suspended by the alien's refusal to cooperate. *See, e.g., Balogun v. INS*, 9 F.3d 347, 350-51 (5th Cir. 1993) (and cases cited therein) (holding that the removal period is tolled if the "petitioner by his conduct has intentionally prevented the INS from effecting his deportation");

---

[1] As noted above, petitioner filed his habeas petition prior to the issuance of travel documents and the first attempt to remove him to Senegal.  To the extent that petitioner claims—as he did in response to the return of writ (*see* Docs.9, 10)—that he is entitled to habeas relief based on the delay in obtaining travel documents his argument is without merit.  In other analogous cases where the only impediment to removal is the issuance of the appropriate travel documentation, courts have uniformly held that "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Estenor, supra,* 2011 WL 5572596, at *3 (citing *Joseph v. Holder*, No. 11-11118, 2011 WL 2893070, at *3 (E.D. Mich. July 20, 2011); *Resil v. Hendricks*, Civ. Act. No. 11-2051, 2011 WL 2489930, at *6 (D.N.J. June 21, 2011)); *see also Newell v. Holder*, 983 F. Supp.2d 241, 248 (W.D.N.Y. 2013) (and numerous cases cited therein); *Nasr v. Larocca,* No. CV 16-1673, 2016 WL 3710200, at *3-4 (C.D. Cal. June 1, 2016) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2016 WL 3704675 (C.D. Cal. July 11, 2016);[1] *Chen v. Banieke*, Civ. No. 15-2188, 2015 WL 4919889, at *4-5 (D. Minn. Aug. 11, 2015); *Head v. Keisler*, No. CIV-07-402-F, 2007 WL 4208709, at *5-6 (W.D. Okla. Nov. 26, 2007) (and numerous cases cited therein).

*Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (per curiam) (same); *Lakhani v. O'Leary*,

No. 1:08cv2355, 2010 WL 3730157, at *2 (N.D. Ohio Sept. 17, 2010) (holding that the

petitioner's continued detention was not unconstitutional because the removal period was

suspended when the petitioner acted to thwart his removal by refusing to board a series of flights

scheduled to return him to Pakistan); *see also Pelich v. INS,* 329 F.3d 1057, 1060-61 (9th Cir.

2003) (holding in accordance with other cited district court decisions that "*Zadvydas* does not

save an alien who fails [to cooperate with efforts] to effectuate his removal" for the "self-

evident" reason that "the detainee cannot convincingly argue that there is no significant

likelihood of removal in the reasonably foreseeable future if the detainee controls the clock");

*Agbanyo v. Cabral*, 518 F. Supp.2d 326, 327-28 (D. Mass. 2007) (dismissing habeas petition

brought by an alien subject to a removal order, who had been confined beyond the six-month

period set forth in *Zadvydas* and who was not likely to be removed in the reasonably foreseeable

future, because the "uncontroverted record evidence demonstrates that the petitioner has not only

failed to cooperate, but has actively obstructed efforts to remove him").

  In a decision upholding the constitutionality of the continued detention of the petitioner,

who had refused to board a plane and later refused to even travel to the airport after ICE had

obtained the requisite travel document for removal, a district court explained:

> *Zadvydas* did not address another statute that authorizes continued detention of an alien beyond the 90-day removal period. [8 U.S.C.] § 1231(a)(1)(C) provides that: "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal." "Subsequent to *Zadvydas*, numerous courts have held that, when an alien refuses to cooperate in securing his removal, he can be detained under § 1231(a)(1)(C) for longer than the six-month period in *Zadvydas* established as presumptively reasonable under § 1231(a)(6)." *Hydara v. Gonzales*, No 07-cv-0941 PJS/JSM, 2007 WL 2409664, at *2 (D. Minn. Aug. 21, 2007), *aff'd sub nom. Hydara v. Doe*, 324 Fed.Appx. 534 (8th Cir. 2009). "These courts have assumed that *Zadvydas* applies to aliens being detained under § 1231(a)(1)(C) and reasoned

6

that, when an alien obstructs his removal, he cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (citing *Lema v. INS,* 341 F.3d 853, 856 (9th Cir. 2003); *Pelich*[, 329 F.3d at 1059-61]; *Davis v. Gonzales,* 482 F.Supp.2d 796, 800-01 (W.D. Tex. 2006); *Powell v. Ashcroft*, 194 F.Supp.2d 209, 212 (E.D.N.Y. 2002)). "The reasoning is that, where the timing of removal is controlled by an uncooperative alien rather than immigration officials, there is no meaningful way to ascertain the likelihood of removal." *Ndenge v. Gonzales*, No. Civ. 07-1726 MJD/JJG, 2008 WL 682091, at* 2 (D. Minn. Mar. 6, 2008) (citing *Lema*, 341 F.3d at 856-57; *Hydara*, 2007 WL 2409664, and *Kanteh v. Ridge*, No. 05-313, 2005 WL 1719217 (D. Minn. June 30, 2005)[(Report & Recommendation), *adopted*, 2005 WL 1705526 (D. Minn. July 19, 2005)]).

*Moses v. Lynch*, No. 15-CV-4168 (PAM/JJK), 2016 WL 2636352, at *3 (D. Minn. Apr. 12, 2016) (Report & Recommendation), *adopted*, 2016 WL 2596020 (D. Minn. May 5, 2016).

Therefore, petitioner has failed to sustain his initial burden of showing that, absent his own acts of obstruction, there is no significant likelihood he will be removed to Senegal in the reasonably foreseeable future. *Cf. Alzubi v. Tryon*, No. 14-CV-705-JTC, 2015 WL 860792, at *8-9 (W.D.N.Y. Feb. 27, 2015).

Finally, petitioner has not demonstrated that he is entitled to habeas relief on the ground that he has not been provided a "neutral decision-maker" to review his continued custody in violation of his right to procedural due process. (*See* Doc. 1 at PageID 7). There is simply no evidence in the record even remotely suggesting there is any merit to his conclusory claim. *Cf. Atugah v. Dedvukaj*, No. 2:16cv68, 2016 WL 3189976, at *4 (W.D. Mich. May 10, 2016) (Report & Recommendation) (rejecting a similar claim as meritless), *adopted*, 2016 WL 3166600 (W.D. Mich. June 7, 2016), *appeal filed*, No. 16-1862 (6th Cir. June 22, 2016); *Moses, supra*, 2016 WL 2636352, at *4 (holding in an analogous case that in the absence of "some indication . . . that ICE failed to comply with any specific requirements" of custody-review procedures established in the Code of Federal Regulations, petitioner had not demonstrated a violation of his Fifth Amendment right to procedural due process).

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated that he is entitled to habeas corpus relief under 28 U.S.C. § 2241 because he has not shown that he is currently in ICE custody in violation of the Constitution or laws of the United States.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petitioner's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **DENIED** without prejudice.

2.  A certificate of appealability should not issue because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


   *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ABDEL-BACHIR MOHAMED,                     Case No. 1:17-cv-573
     Petitioner,

                                  Dlott, J.
     vs.                                      Bowman, M.J.

U.S. ATTORNEY GENERAL, *et al.*,
     Respondents.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).